## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ——————————————————— ) | |
| FRIENDS OF THE EARTH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 12-0363 (ABJ) |
| ) | |
| UNITED STATES ENVIRONMENTAL ) | |
| PROTECTION AGENCY, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ——————————————————— ) | |

### <u>MEMORANDUM OPINION</u>

Plaintiff Friends of the Earth ("FOE") has brought this action seeking to compel defendants – the United States Environmental Protection Agency and Lisa Jackson in her official capacity as Administrator of the United States Environmental Protection Agency (together, "EPA") – to make a determination as to whether lead emissions from general aviation aircraft engines using aviation gasoline endanger the  public health or welfare under section 231(a)(2)(A) of the Clean Air Act of 1970, as amended ("Clean Air Act"), 42 U.S.C. § 7571(a)(2)(A).  A finding that emissions cause or contribute to air pollution which may reasonably be anticipated to endanger public health or welfare is referred to as an "endangerment determination," and the making of such a finding would trigger EPA's statutory obligation to promulgate standards to govern the emissions.

Plaintiff claims that EPA's failure to make an endangerment determination for lead emissions to date constitutes the unreasonable delay by the agency in performing its statutory duty that private individuals may challenge under section 304 of the Clean Air Act, 42 U.S.C. § 7604(a), known as the "citizen suit provision."  EPA has moved for summary judgment, and

the Court undertook to resolve the threshold jurisdictional question first.  The only question before the Court at this juncture is whether the citizen suit provision of the Clean Air Act authorizes this lawsuit and provides this Court with the jurisdiction to grant the relief that plaintiff seeks.

The Court finds that plaintiff's claim does not satisfy the condition for jurisdiction under the citizen suit provision because the act or duty that plaintiff seeks to compel is not a mandatory or nondiscretionary one.  Accordingly, the Court will grant EPA's motion for summary judgment.

## BACKGROUND

### I.    The Clean Air Act

Section 231(a) of the Clean Air Act, 42 U.S.C. § 7571(a), requires EPA to study the effects of air pollutant emissions from aircraft on air quality, and to issue proposed emission standards for any air pollutant "which, in [the Administrator's] judgment causes, or contributes to, air pollution which may reasonably be anticipated to endanger public health or welfare."  *Id.* §§ 7571(a)(1), (2)(A).  The provision also dictates how EPA should go about setting the emissions standards.  It directs EPA's Administrator to consult with the Administrator of the Federal Aviation Administration and to hold public hearings.  *Id.* §§ 7571(a)(2)(B), (3).

The Act also establishes a bifurcated scheme that divides jurisdiction to oversee EPA between the district courts and the circuit courts.  *See Oljato Chapter of the Navajo Tribe v. Train*, 515 F.2d 654, 657–58 (D.C. Cir. 1975).

Under section 307(b)(1), 42 U.S.C. § 7607(b)(1), the United States Court of Appeals for the District of Columbia has exclusive jurisdiction to review action of the EPA Administrator in promulgating certain national standards and rules, as well as "any other nationally applicable

regulations promulgated, or final action taken, by the Administrator."  The same section provides

that an individual may file a petition for review of final actions of the Administrator that are

locally or regionally applicable only in the federal court of appeals for the appropriate circuit.

Section 304(a)(2), 42 U.S.C. § 7604(a)(2), the "citizen suit provision," permits any

person to commence a civil action on his own behalf against the EPA Administrator in the

district court "where there is alleged a failure of the Administrator to perform any act or duty

under this chapter which is not discretionary with the Administrator."  Section 304(a) further

provides that "[t]he district courts of the United States shall have jurisdiction to compel

(consistent with paragraph (2) of this subsection) agency action unreasonably delayed[.]"

## II.    Factual Background

This suit arises out of a petition for rulemaking that plaintiff filed with EPA on October

3, 2006.  The petition requested that EPA:  (1) make a finding that lead emissions from general

aviation aircraft using aviation gasoline endanger public health or welfare; and (2) issue

regulations limiting such emissions, pursuant to section 231 of the Clean Air Act.  Compl. [Dkt.

# 1] ¶ 1; Ex. 1 to Defs.' Mot. for Summ. J. ("Defs.' Mot.") [Dkt. # 22-3].  Plaintiff has dedicated

a large portion of its complaint to identifying the harms attendant to lead emissions and the

quantity of lead emissions that come from aircraft engines using leaded aviation gasoline.

Compl. ¶¶ 23–36.  While the allegations raise significant concerns, they do not bear on the

narrow jurisdictional issue now before the Court, and they need not be recited here.  The Court

notes that its decision that it lacks the authority to hear this case should not be viewed as making

any statement at all about the importance or the validity of the concerns that underlie this action.

On November 16, 2007, EPA issued a Notice of Petition for Rulemaking in the Federal

Register soliciting information and public comment on the issues raised by plaintiff in its

petition, including the use of leaded aviation gasoline in general aviation piston-engine aircraft and the potential impact of its use on public health and welfare.  72 Fed. Reg. 64,570, 64,572–73 (Nov. 16, 2007).  Two and a half years later, on April 28, 2010, EPA issued an Advance Notice of Proposed Rulemaking on Lead Emissions from Piston-Engine Aircraft Using Leaded Aviation Gasoline.  75 Fed. Reg. 22,440 (Apr. 28, 2010).  The notice included a description of the information that EPA had obtained concerning the health and environmental impacts of exposure to lead emissions from general aviation piston-engine aircraft, and it solicited additional information on that issue.  *Id.* at 22,441.

Having received no response to its petition from EPA, plaintiff filed the complaint in this action on March 7, 2012.  In its three claims for relief, the complaint asserted that: (1) EPA's failure to respond to plaintiff's 2006 petition to regulate lead emissions from certain aircraft constitutes unreasonable delay in violation of the Clean Air Act, *id.* ¶¶ 52–56; (2) EPA's failure to respond to plaintiff's 2006 petition constitutes unreasonable delay in violation of the Administrative Procedure Act, *id.* ¶¶ 57–61; and (3) EPA's failure to make a finding as to whether lead emissions from aviation gasoline-fueled aircraft cause or contribute to air pollution which may reasonably be anticipated to endanger public health or welfare constitutes unreasonable delay under section 231 of the Clean Air Act, *id.* ¶¶ 62–67.

Pursuant to the local rules of this Court, the parties filed a meet and confer statement in this case on June 1, 2012.  Joint Report Pursuant to Local Rule 16.3 [Dkt. # 21].  The statement indicated that the parties did not agree on how briefing and discovery should proceed.  *Id.* ¶¶ 7–8.  According to the statement, EPA believed that discovery would not be needed to resolve the unreasonable delay claims in plaintiff's complaint, "in part because the relevant administrative docket concerning EPA's response to Plaintiff's Petition is publicly available."  *Id.* ¶ 7.  The

plaintiff maintained that discovery was necessary on the issue of whether there has been unreasonable delay "since evidence relating to these issues is within EPA's control and is not publicly available." *Id.* ¶ 8. It took the position that the administrative docket was not complete, "as EPA has yet to respond to the Petition or to make an endangerment finding." *Id*.

Shortly thereafter, though, on July 19, 2012, EPA issued its final decision in response to plaintiff's rulemaking petition. Ex. 4 to Defs.' Mot. [Dkt. # 22-6]. The decision explains:

> This document is EPA's final decision on the FoE Petition, and to the extent the Petition requests additional or different action by EPA, we are denying it. In response to Petitioners' request, EPA is not at this time issuing a judgment on whether lead emissions from general aviation aircraft piston engines cause or contribute to air pollution which may reasonably be anticipated to endanger public health or welfare, and is consequently not prepared at this time to propose standards for such emissions. However, EPA intends to initiate a notice and comment proceeding under [Clean Air Act] section 231(a)(2)(A) regarding whether such emissions cause or contribute to air pollution which may reasonably be anticipated to endanger public health or welfare.

*Id.* at 4. The decision details the factors that EPA believed it must consider in order to conduct the endangerment determination, as well as all of the relevant research and data that was available to EPA at the time, the research and data that EPA expected to obtain in the future, and the steps that EPA was taking to produce more research and data on the relevant factors. *Id.* at 4–15. Finally, the decision concludes that given the available data, the ongoing technical work that EPA was engaged in for the purpose of making an endangerment finding, and EPA's limited resources, EPA believed that rulemaking would be premature at that time. *Id.* at 17–18. EPA stated that it expected to undertake the endangerment proceeding in the future "on a timeframe consistent with its other priorities and the continuing technical activities regarding such emissions." *Id.* at 18. It estimated that it would take "up to three years, or until mid- to late 2015, to develop a proposal, publish it for comment, review and analyze the extensive comments

that are expected, and issue a final determination with regard to endangerment and contribution from lead emissions of piston aircraft engines." *Id.* at 15.

The next day – July 20, 2012 – EPA filed a motion for summary judgment in this case. [Dkt. # 22].  The motion argued, in part, that since EPA had made its final decision on plaintiff's petition, the first and second claims for relief in the complaint were moot.  Defs.' Mem. in Support of Mot. for Summ. J. ("Defs.' Mem.") [Dkt. # 22-1] at 17–19.  As to the third claim for relief, EPA argued that summary judgment should be granted for two reasons.  First, plaintiff failed to state a claim and failed to identify an applicable waiver of sovereign immunity that would give rise to jurisdiction because the endangerment determination plaintiff sought was not a mandatory duty that could be compelled under the citizen suit provision of the Clean Air Act. *Id.* at 19–26.  Second, EPA moved for summary judgment on the merits, on the grounds that the determination was not unreasonably delayed.  *Id.* at 20–33.

The Court ordered the parties to submit another report addressing whether plaintiff still believed that any further discovery was necessary and, if so, whether the mootness of the first and second causes of action and the jurisdictional question underlying the third cause of action should be briefed and decided first.  Minute Order (July 23, 2012).  In response, plaintiff filed a stipulation dismissing the first and second claims for relief from its complaint without prejudice, [Dkt. # 23], and the parties filed the requested status report, setting forth their respective positions on how to proceed, [Dkt. # 25].

EPA proposed that the Court address the threshold legal issue of whether the Clean Air Act imposes an enforceable mandatory duty on EPA to make an endangerment determination for each pollutant emitted by aircraft engines before the parties briefed the merits of whether the determination for lead emissions was unreasonable delayed.  Joint Status Report [Dkt. # 25] ¶ 6.

EPA also argued that should the Court recognize the existence of such a duty, further briefing should proceed solely on an administrative record, which would consist of EPA's decision on plaintiff's petition and its underlying record. *Id.* ¶¶ 8–9. Plaintiff took the position that discovery should proceed immediately without bifurcated briefing, *id.* ¶ 2, and it identified certain categories of records it would seek to discover "to the extent they are not included in EPA'[s] record of the petition denial." *Id.* ¶ 4.

The Court decided to resolve the question of its own jurisdiction before considering the necessity for discovery beyond the administrative record. Minute Order (Aug. 20, 2012).

The threshold legal issue has now been fully briefed and argued, and the Court has reviewed both parties' filings, as well as the amicus brief filed by Yvonne D. Lewis on August 27, 2012, [Dkt. # 26].

## STANDARD OF REVIEW

While EPA has styled its motion as a motion for summary judgment, it acknowledges that the threshold issue presently before the Court should be treated as a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Defs.' Reply in Support of Mot. for Summ. J. ("Defs.' Reply") [Dkt. # 28] at 2.

In evaluating a motion to dismiss under Rule 12(b)(1), the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (citations omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002).  Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. Envtl. Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with examination of our jurisdiction.").  Because "subject-matter jurisdiction is an 'Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'"  *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the court "is not limited to the allegations of the complaint."  *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987).  Rather, a court "may consider such materials outside the pleadings as it deems appropriate to resolve the question of whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1993); *see also Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## ANALYSIS

The question for decision at this stage is whether the Court has subject matter jurisdiction to review plaintiff's claim that EPA has unreasonably delayed making an endangerment

determination for lead emissions from general aviation aircraft using aviation gasoline. This turns in part on whether the United States has waived its sovereign immunity as to this claim.

The district courts of the United States "may not exercise jurisdiction absent a statutory basis." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). And the United States is not amenable to suit in the federal courts absent an express waiver of sovereign immunity. *United States v. Mitchell*, 463 U.S. 206, 212 (1983). "Sovereign immunity is jurisdictional in nature." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). When it has not been waived, sovereign immunity shields the federal government, its agencies, and federal officials acting in their official capacities from suit. *Id.* at 471 (the federal government and its agencies); *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985) (federal officials in their official capacities).

Generally, when a plaintiff challenges an action taken by an administrative agency, the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, provides a cause of action for the plaintiff and a waiver of sovereign immunity by the government. *See Am. Road & Transp. Builders Ass'n. v. EPA*, 865 F. Supp. 2d 72, 80–81 (D.D.C. 2012), *aff'd* No. 12-5244, 2013 WL 599474 (D.C. Cir. Jan. 28, 2013) (per curiam). When that is the case, the district courts have jurisdiction under the general federal question statute, 28 U.S.C. § 1331. *Am. Road & Transp. Builders Ass'n*, 865 F. Supp. 2d at 80–81. However where, as here, a statute other than the APA provides an "adequate remedy in a court," the APA cannot supply the cause of action. 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action *for which there is no other adequate remedy in a court* are subject to judicial review." (emphasis added)); *see Am. Road & Transp. Builders Ass'n.*, 865 F. Supp. 2d at 81, citing *Fornaro v. James*, 416 F.3d 63, 66 (D.C. Cir. 2005) & *Wash. Legal Found. v. Alexander*, 984 F.2d 483, 486 (D.C. Cir. 1993). "And if the statute providing the adequate remedy channels review to the courts of appeals, it

eliminates the federal question jurisdiction that the district courts would otherwise enjoy."  *Id.*, citing *Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 584 (1980).

Plaintiff cites the citizen suit provision of the Clean Air Act, 42 U.S.C. § 7604, as the waiver of sovereign immunity and the source of this Court's jurisdiction.  Compl. ¶¶ 3–5, 62–67. That provision enables any person to bring a cause of action in the district courts "where there is alleged a failure of the Administrator to perform any act or duty under [the Clean Air Act] which is not discretionary with the Administrator."  42 U.S.C. § 7604(a).  The provision also authorizes suits to compel nondiscretionary agency action which has been unreasonably delayed.  *Id.*

There is some dispute over whether the APA could provide the necessary waiver of immunity here if the Court were to find that the Clean Air Act does not provide a valid cause of action.  *Compare* Pl.'s Opp. at 24–25 *with* Defs.' Reply at 3–5.  The APA provides that:

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States . . . .

5 U.S.C. § 702.  The D.C. Circuit has held that "[t]he APA's waiver of sovereign immunity applies to any suit whether under the APA or not."  *Chamber of Commerce of the U.S. v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996).  But the waiver provision in the APA goes on to state that:

> Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

5 U.S.C. § 702.

Although there does not appear to be any precedent from the D.C. Circuit that is directly on point, at least one other court in this district has found that this express limitation on the

waiver of sovereign immunity prevents a plaintiff from using the APA as a "back door . . . to raise claims pursuant to other statutes." *Alliance to Save the Mattaponi v. U.S. Army Corps of Eng'rs*, 515 F. Supp. 2d 1, 6 n.3 (D.D.C. 2007) (emphasis omitted).  And other courts in this district have found that where there is no nondiscretionary act or duty to compel, a claim of agency action unreasonably delayed under the citizen suit provision of the Clean Air Act is barred by both lack of subject matter jurisdiction <u>and</u> sovereign immunity.  *See, e.g.*, *Am. Road & Transp. Builders Ass'n.*, 865 F. Supp. 2d at 81–88; *Royster-Clark Agribusiness, Inc. v. Johnson*, 391 F. Supp. 2d 21, 25–26 (D.D.C. 2005); *Sierra Club v. Leavitt*, 355 F. Supp. 2d 544, 547, 557 (D.D.C. 2005).[1]

Given this legal background, the parties agree that the Court only has jurisdiction over plaintiff's claim if the act or duty that plaintiff seeks to compel is one that is not discretionary with the Administrator of EPA.  Defs.' Reply at 2–3; Draft Tr. at 20:19–:21 (Counsel for plaintiff:  "I think it's Section 304 that clearly waives sovereign immunity and grants this Court

---

[1]    EPA reminds the Court that it must construe waivers of sovereign immunity narrowly in favor of the government.  *U.S. Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992).  Plaintiff does not quarrel with that general proposition.  But EPA goes on:  "Thus, to the extent there is any ambiguity in what Section 231(a)(2)(A) requires, that ambiguity must be resolved in favor of EPA."  Defs.' Reply at 5, citing *Cascade Conservation League v. M.A. Segale, Inc.*, 921 F. Supp. 692, 699 (W.D. Wash. 1996).  The Court notes that it "owes no deference to an agency's interpretation of a statute that defines this Court's subject matter jurisdiction."  *Sierra Club*, 355 F. Supp. 2d at 548, citing *Fox Television Stations, Inc. v. FCC*, 280 F.3d 1027, 1038–39 (D.C. Cir. 2002).  Moreover, applying the general principal means that the Court must construe the waiver provision in section 304(a) narrowly, but not the substantive provision in the Clean Air Act that outlines the agency's duties (*i.e.* section 231(a)(2)(A)).  *See Monongahela Power Co. v. Reilly*, 980 F.2d 272, 276 n.3 (1992) (noting that the term "nondiscretionary" in section 304 of the Clean Air Act has been construed narrowly); *cf. Gomez-Perez v. Potter*, 553 U.S. 474, 483 (2008) (finding that the presence or absence of a statutory provision expressly creating a private right of action cannot alter the scope of another separate statutory provision and that "it would be perverse if the enactment of a provision explicitly creating a private right of action – a provision that, if anything, would tend to suggest that Congress perceived a need for a strong remedy – were taken as a justification for narrowing the scope of the underlying prohibition").  In any event, the Court's ruling does not depend upon a narrow or deferential construction of the substantive provision.

jurisdiction to hear this case").  So, the Court has subject matter jurisdiction over this action only if making the endangerment determination that would require the agency to promulgate standards is a nondiscretionary act assigned to the agency.  *See Envtl. Def. v. Leavitt*, 329 F. Supp. 2d 55, 63 (D.D.C. 2004) ("This citizen-suit provision provides the district court with limited but exclusive jurisdiction to order the Administrator to perform nondiscretionary duties.").

There is only one case that has directly addressed that question.  In *Center for Biological Diversity v. EPA ("CBD")*, 794 F. Supp. 2d 151 (D.D.C. 2011), the plaintiffs sought in part to compel the agency to complete endangerment determinations under section 231 of the Clean Air Act for emissions of certain greenhouse gases from nonroad vehicles and engines.  *Id.* at 153.  As in this case, the plaintiffs argued that the court had jurisdiction to grant the relief sought under the Clean Air Act's citizen suit provision because they were seeking to compel "agency action unreasonably delayed."  *Id.*  EPA filed a motion to dismiss, in which it argued that the court lacked subject matter jurisdiction over the claim because the endangerment determination is not a nondiscretionary act committed to the Administrator.  *Id.* at 159.  The court denied the motion to dismiss.  *Id.* at 162.  Looking primarily to the structure and purpose of section 231, it found that the endangerment determination was a nondiscretionary act that the court had jurisdiction under the citizen suit provision to compel if unreasonably delayed.  *Id.* at 158–62. Notwithstanding the logic behind the reasoning set forth in the *Center for Biological Diversity* this Court has come to the opposite conclusion after close consideration of the statute and the law of this circuit.

I.       **The language and structure of the statute render the endangerment determination a discretionary act.**

A.   The text of the provision does not clearly define a mandatory duty.

To resolve a question of statutory interpretation, the Court begins with the language of the statute itself.  *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002).  The relevant section of the Clean Air Act provides:

> The Administrator shall, from time to time, issue proposed emission standards applicable to the emission of any air pollutant from any class or classes of aircraft engines which in his judgment causes, or contributes to, air pollution which may reasonably be anticipated to endanger public health or welfare.

42 U.S.C. § 7571(a)(2)(A).  As plaintiff points out, the use of the imperative "shall" creates a mandatory duty.  *See Bennett v. Spear*, 520 U.S. 154, 175 (1997); *Allied Pilots Ass'n v. Pension Benefit Guar. Corp.*, 334 F.3d 93, 98 (D.C. Cir. 2003).  EPA must periodically issue standards to control the emission of those pollutants from aircraft engines that pose a danger to public health.  And if it fails to do so, or it delays in doing so, there is no question that a plaintiff could ask this Court to order it to perform that duty by invoking the citizen suit provision.  And the content of that order would be clear:  "you shall issue proposed emission standards."  But the Court is not persuaded that the imperative extends to the act of making the endangerment finding which serves as the predicate for the mandatory duty, and is not the duty itself.

First, the sentence is structured such that the command "shall" applies to the phrase "issue proposed emission standards."   But there is no parallel phrase associated with the endangerment determination to which "shall" could similarly apply.   (For example, "The Administrator shall . . . issue proposed emission standards . . . and make a determination whether . . . ."). So, there is no clear textual basis for or guide to the content of the order sought here: "you shall make your judgment about whether pollutants from lead emissions may reasonably be

anticipated to endanger public health."   It is true, as plaintiff points out, that Congress did not clearly separate the phrase concerning the endangerment determination from the imperative "shall" using any grammatical convention, such as punctuation.   And it did not decide to use a conditional sentence, such as, "*if* the Administrator finds in his judgment that any air pollutant causes, or contributes to, air pollution which may reasonably be anticipated to endanger public health or welfare, *then* it shall issue emission standards."   Rather, it used the subordinate conjunction, "which":   the Administrator *shall* issue emission standards for any air pollutant "which" meets certain criteria.   So it is not clear that Congress intended to establish the making of endangerment findings as a mandatory duty, and the language also falls short of a clear indication that Congress intended to designate it to be a discretionary activity.

EPA contends that Congress actually did make it clear when it used the phrase "in his judgment."   Defs.' Mem. at 21–22.   But this reads too much into the phrase.   While the use of "in his judgment" reveals that Congress sought to assign the agency the responsibility to judge or determine *which* pollutants belong to the category the agency is required to regulate, it does not signal that Congress necessarily gave the agency complete discretion over whether and when to make that determination.   The provision states that the Administrator shall issue standards applicable to the emission of "any air pollutant . . . *which* in his judgment causes . . . ."   The decision committed to agency expertise is the substance of the determination – whether an air pollutant meets the criteria – and the word "judgment" appears to be simply a synonym for decision or determination.   Thus, the sentence has the same meaning as if it said "which he finds" or "which he determines."   So, the text of the statute alone does not clearly indicate that making the determination is only a discretionary duty.

This aspect of the text of section 231(a)(2)(A) distinguishes this case from *National Wildlife Federation v. Browner*, Civ. A. No. 95-1811(JHG), 1996 WL 601451 (D.D.C. Oct. 11, 1996), *aff'd* 127 F.3d 1126 (D.C. Cir. 1997), which EPA cites in support of its textual interpretation of the statute.[2]   Defs.' Reply at 12.   The statute before the court in *National Wildlife Federation* was the Clean Water Act.   Like the Clean Air Act, the Clean Water Act contains a citizen suit provision that permits citizens to sue EPA for alleged failures "to perform any act or duty under [the Act] which is not discretionary with the Administrator."   33 U.S.C. § 1365(a).

The issue in *National Wildlife Federation* arose from two substantive provisions of the Clean Water Act.   Section 303(c)(3) provides the Administrator of EPA with a mandatory duty to review and either approve or disapprove any new or revised state water quality standards within a set period of time.   The other substantive provision, section 303(c)(4)(B) provides:

> The Administrator shall promptly prepare and publish proposed regulations setting forth a revised or new water quality standard for the navigable waters involved . . . *in any case where the Administrator determines that a revised or new standard is necessary* to meet the requirements of this chapter.

33 U.S.C. § 1313(c)(4)(B) (emphasis added).

The plaintiffs had sued EPA for failing to review and disapprove a decision by the state of Michigan not to designate Lake Superior as a certain type of water body which would require the adoption of anti-degradation policies and programs.   1996 WL 601451, at *1.   The court first found that section 303(c)(3) did not apply because Michigan never submitted new or revised water quality standards to EPA.   *Id.* at *4–5.   It next found that section 303(c)(4)(B) did

---

2       Even if *National Wildlife Federation* were on point, a decision of another court in this district is not binding on this Court.   *In re Exec. Office of the President*, 215 F.3d 20, 24 (D.C. Cir. 2000) ("District Court decisions do not establish the law of the circuit, nor, indeed, do they even establish the law of the district.") (citations and internal quotation marks omitted).

not create a mandatory duty for EPA to review and overturn the state's decision:  "While the statute grants EPA the power to direct the implementation of a new or revised standard *in any case where the Administrator determines* it is necessary, the discretionary nature of this provision places it beyond the reach of the citizen suit provisions . . . ."  *Id.* at *5.

*National Wildlife Federation* is thus distinguishable from the instant case.  The relevant provision of the Clean Water Act contained a separate clause that spoke directly to the discretion of the Administrator about whether or not to make a determination.  And the structure of the section at issue was different than the section of the Clean Air Act at issue here.  There, Congress clearly mandated that EPA take action in one subset of cases, so it was significant that Congress used more permissive language when referring to the same action for a different subset of cases. *Id.* at *5.

EPA also relies on *Massachusetts v. EPA*, 549 U.S. 497 (2007).  Defs.' Reply at 9–12. There, the Supreme Court found that EPA's reasons for denying a petition for rulemaking that asked EPA to make an endangerment determination for greenhouse gases under a provision of the Clean Air Act that is structured identically to section 231(a)(2)(A) were inconsistent with the statute.  549 U.S. at 534.[3]  The Court held that "[u]nder the clear terms of the Clean Air Act, EPA can avoid taking further action only if it determines that greenhouse gases do not contribute to climate change or if it provides some reasonable explanation as to why it cannot or will not exercise its discretion to determine whether they do."  *Id.* at 533.  Although that language lends support to EPA's position that the endangerment determination is discretionary, it is not

---

3      The provision provided:  "The [EPA] Administrator shall by regulation prescribe (and from time to time revise) in accordance with the provisions of this section, standards applicable to the emission of any air pollutant from any class or classes of new motor vehicles or new motor vehicle engines, which in his judgment cause, or contribute to, air pollution which may reasonably be anticipated to endanger public health or welfare . . . ."  549 U.S. at 506 (alteration in original).

controlling.  As the *Center for Biological Diversity* court pointed out, the Supreme Court was considering EPA's rationale for denying a petition for rulemaking; it was not considering whether the substantive provision imposes on EPA an independent obligation to make an endangerment determination.  *See CBD*, 794 F. Supp. 2d 159.

But the absence of a clear statement that the duty is discretionary does not suffice to make it mandatory.  And the case on which plaintiff relies for its textual argument, *Environmental Defense Fund v. Thomas*, 870 F.2d 892 (2d Cir. 1989), is also distinguishable from this case.  *See* Pl.'s Opp. at 14–15.  In *Environmental Defense Fund*, the Second Circuit was presented with the question of whether section 109(d) of the Clean Air Act imposed a nondiscretionary duty that was actionable under the citizen suit provision.  870 F.2d at 894. Section 109(d) states:

> Not later than December 31, 1980, and at five-year intervals thereafter, the Administrator shall complete a thorough review of the criteria published under [Section 108] . . . *and promulgate such new standards as may be appropriate* . . . . The Administrator may review and revise criteria or promulgate new standards earlier or more frequently than required under this paragraph.

42 U.S.C. § 7409(d) (emphasis added).  The appellant argued that after EPA completed the mandated review, this provision imposed a nondiscretionary duty on EPA to decide at least whether some revisions to the standards were necessary.  870 F.2d at 898.  The Second Circuit held that the statute requires the Administrator to take some action regarding the revision of the standards and "[b]ecause the duty to make *some* decision is non-discretionary, it is enforceable under Section 304 in the district courts."  *Id.* at 896.  The court rejected the appellees' construction of the phrase "as may be appropriate" as conferring on EPA a "wholly discretionary authority" about whether or not to act.  *Id.* at 898, 900.

17

The Second Circuit's decision is not binding in this circuit, *see Kreuzer v. Am. Acad. of Periodontology*, 735 F.2d 1479, 1489 n.17 (D.C. Cir. 1984), but it is distinguishable from the instant case in any event.  In determining that the D.C. Circuit did not have exclusive jurisdiction over the issue before it, the district court relied on the fact that the provision included a stated deadline for completion of the review as well as the promulgation of "such new standards as may be appropriate."  870 F.2d at 897 & n.1 ("[N]ot later than December 31, 1980, and at five-year intervals thereafter," the Administrator shall "complete a thorough review . . . *and* promulgate such new standards as may be appropriate." (emphasis added)).  So, the court found that the provision established a nondiscretionary duty to make the threshold decision of whether it was appropriate to promulgate new standards or not.  *Id*.  Here, the statute does not mandate that the Administrator "shall" make an endangerment finding "*and*" take some action based on that review.  The finding or "judgment" comes first, and it triggers the mandatory duty.  And although there is some time limitation on the mandatory duty ("from time to time"), and a citizen could bring a suit to compel the issuance of the emissions standards once an endangerment determination has been made, *see Am. Lung Ass'n v. Reilly*, 962 F.2d 258, 263 (2d Cir. 1992) ("[W]hen a statute requires agency action at indefinite intervals, such as 'from time to time' . . . 'unreasonable delay' [can] be a meaningful standard for judicial review."), there is no time limitation on the antecedent judgment or determination.[4]

---

[4]     *Sierra Club v. Leavitt*, 355 F. Supp. 2d 544 (D.D.C. 2005), is also distinguishable because it concerned the interpretation of an agency regulation, which merits deference to the agency.  Moreover, the language of the regulation is distinguishable from the statutory provision at issue here.  The regulation that was before the court stated:  "No later than July 1, 2003, the Administrator shall propose any requirements to control hazardous air pollutants from motor vehicles and motor vehicle fuels that the Administrator determines are appropriate pursuant to section 202(1)(2) of the Clean Air Act."  *Id.* at 549, citing 40 C.F.R. § 80.1045.  The words, "that the Administrator determines are appropriate," modifies "any requirements," so the regulation

Since the language of the statute does not clearly create a mandatory duty to undertake the endangerment analysis, the Court concludes that it cannot compel the agency to begin under section 304.  *See Envtl. Def. Fund v. Thomas*, 870 F.2d 892, 899 (2d Cir. 1989) ("[T]he district court has jurisdiction, under Section 304, to compel the Administrator to perform purely ministerial acts, not to order the Administrator to make particular judgmental decisions."); *see also Sierra Club v. Thomas*, 828 F.2d 783, 791 (D.C. Cir. 1987) ("Congress provided for district court enforcement under section 304 in order to permit citizen enforcement of clear-cut violations by polluters or defaults by the Administrator where the only required judicial role would be to make a clear-cut factual determination of whether a violation did or did not occur." (footnote and internal quotation marks omitted)); *Monongahela Power Co.*, 980 F.3d at 276 (the term "nondiscretionary [is] narrowly construed").

>    B.    Consideration of the structure and purpose of the provision does not change the outcome.

Given the lack of clarity in the test, the court in *Center for Biological Diversity* relied on the structure and purpose of section 231(a) when it concluded that subsection (a)(2)(A) imposes a nondiscretionary duty on the Administrator to make an endangerment determination.  The court reviewed all of the provisions of section 231(a).  It found that, as a whole, "[t]hese provisions, all of which use compulsory language, together create a comprehensive scheme for the regulation of harmful aircraft emissions, of which paragraph 231(a)(2)(A) is the centerpiece:  no other provision provides for the development of aircraft emissions standards."  794 F. Supp. 2d at 160. The court pointed to Congress's use of the word "shall" throughout the subsection, and concluded that Congress "intended to mandate a certain outcome – the regulation of harmful

---

clearly grants discretion as to the substance of the requirements, not as to whether the Administrator must propose them.  *See id.* at 549–50.

aircraft emissions." *Id.*   Finally, it invoked statements in the legislative history showing that Congress expected EPA to prescribe emissions standards promptly.  *Id.* at 161, citing Clean Air Amendments of 1970, Pub. L. No. 91-604, 84 Stat. 1676, 1704 (1970) (when originally enacted, section 231(a)(2) began with "Within 180 days after commencing [the] study and investigation [required by paragraph (a)(1) ], the Administrator shall publish a report of such study and investigation and shall issue proposed emission standards . . . ."); H.R. Rep. No. 91-1146 (1970), *reprinted in* 1970 U.S.C.C.A.N. 5356, 5369–70 ("Section 231 directs the Secretary to prescribe, as soon as practicable . . . emission standards for any class of aircraft or aircraft engines which cause or contribute to [harmful] air pollution . . . .").  Based on this analysis, the Court implied from its consideration of section 231(a) as a whole that Congress must have intended to mandate the making of the endangerment finding, because making that finding was a necessary first step towards accomplishing the task that it <u>did</u> make mandatory.  794 F. Supp. 2d at 161–62.  But the law in this circuit cautions against adopting that approach.

In *Sierra Club v. Thomas*, 828 F.2d at 787–797, the D.C. Circuit distinguished between the type of nondiscretionary action that a district court has jurisdiction to compel under the Clean Air Act's citizen suit provision, and the type of action for which enforcement resides within the exclusive jurisdiction of the D.C. Circuit under section 307 of the Clean Air Act.  The court held that "it is highly improbable that a deadline will ever be nondiscretionary, i.e. clear-cut, if it exists only by reason of an inference drawn from the overall statutory framework." *Id.* at 791.

Here, as the decision in *Center for Biological Diversity* reveals, to find that there is a duty to make an endangerment determination, the Court would have to infer the duty from the overall statutory framework.  And to grant the relief that plaintiff seeks, the Court would have to prescribe the entire series of administrative steps that would lead up to the making of the

endangerment determination, and decide when each should be completed so that EPA could fulfill the statute's requirement that from time to time it shall issue proposed emission standards.[5]  *See* Draft Tr. at 21:21–22:19.[6]  This exercise goes beyond compelling a "ministerial act" or correcting a "clear-cut default" by the Administrator.   And it would intrude into the agency's discretionary domain to organize its operations with respect to the various pollutants that might warrant endangerment determinations.  *See N.Y. Pub. Interest Research Grp., Inc. v. Whitman*, 214 F. Supp. 2d 1, 3 (D.D.C. 2002) (concluding that Clean Air Act's citizen suit provision did not give the court jurisdiction "to intrude upon the agency's discretionary domain to organize its operations with respect to Title V petitions.").   The fact that the sort of order sought by plaintiff does not flow directly from the language of the statute is a fundamental problem in this case that gives the Court pause.

---

[5]    The Court is not suggesting that it is the vagueness of the deadline for EPA to issue the proposed emission standards – "from time to time" – that deprives the Court of jurisdiction.  *Cf. Am. Lung Ass'n*, 962 F.2d at 263 ("[W]hen a statute requires agency action at indefinite intervals, such as 'from time to time' . . . 'unreasonable delay' [can] be a meaningful standard for judicial review.").  Rather, it is the chain of inferences the Court would have to draw and the intrusions on agency discretion that would be necessary to establish a deadline for the endangerment determination.

[6]    At oral argument, counsel for the plaintiff expressed the view that EPA's planned schedule for completing its ongoing research and study was too long.  She went on to say:

> So what plaintiffs seek here is an enforceable deadline from the Court so that the agency will be compelled to start this process [of developing emission standards], to take the first step in a process that admittedly will take years.  The Section 231, the other subsections make clear that the agency has a duty to consult with the FAA on safety issues, do public comment and, you know, make final regulations after all that has taken place.

> The Court:  . . . [Y]ou're saying I get to give them a whole schedule for all the underlying predicate steps as well as the ultimate mandatory duty?

> [Counsel for plaintiff]:  "Yes, Your Honor, I think that's right."

Draft Tr. at 21:21–22:19.

Moreover, the questions that would arise if this Court were to assess whether the agency unreasonably delayed making the endangerment determination are the types of questions entrusted to the court of appeals.  "The questions that will generally arise from these inferrable [sic] deadlines, such as whether non-compliance is justified by the need for 'quality' or by the 'burden[s]' that compliance would impose on an agency, are more suited for resolution by courts of appeals, because 'we develop an expertise concerning the agencies assigned [us] for review.'" *Sierra Club*, 828 F.2d at 792 (alterations in original) (footnote omitted), quoting *Telecomms. Research and Action Ctr. v. FCC ("TRAC")*, 750 F.2d 70, 78 (D.C. Cir. 1984); *see also id.* at 792 ("Where Congress has established no date-certain deadline – explicitly or implicitly – but EPA must nevertheless avoid unreasonable delay, it does not follow that EPA is, for the purposes of section 304(a)(2) under a nondiscretionary duty to avoid unreasonable delay.  Instead this type of duty is discretionary and, pursuant to *TRAC*, this court reviews claims alleging unreasonable delays of this type in order that we may protect our eventual jurisdiction under section 307 to review the final EPA action.").  Indeed, questions such as EPA's optimal allocation of resources, the amount of information that EPA needs in order to make the endangerment determination, and the amount of time that is reasonable for EPA to analyze the relevant data have all been specifically identified as factors the Court will be asked to consider if it reaches the question of whether the determination has been unreasonably delayed.  *See* Defs.' Mem. at 26–33 (arguing that the delay in making the endangerment determination for lead from aviation gasoline is not unreasonable); and Joint Status Report (Aug. 16, 2012) [Dkt. # 25] ¶ 4 (plaintiff's description of the type of information it will need to support its claim of unreasonable delay, including "documents relating to EPA's criteria for finding endangerment and the Agency's process for making an endangerment finding pursuant to Section 231").

Moreover, these are exactly the same issues – applied to the same circumstances – that would be presented to the court of appeals if plaintiff appealed the denial of its rulemaking petition.  So, even if one can infer from the structure of the statute that there is some point at which it may become mandatory for EPA to make an endangerment determination, the assessment of whether that point has been reached is not within the jurisdiction of this Court, and it is not the kind of nondiscretionary duty that Congress granted this court jurisdiction to compel.

## II.    Other mechanisms exist to prevent EPA from skirting the comprehensive scheme set out by Congress.

After it analyzed the structure and purpose of the statute, the court in *Center for Biological Diversity* expressed the concern that there was a risk that EPA could shirk its mandatory duty to issue proposed emission standards, and evade altogether the comprehensive scheme that Congress set out in section 231(a), if it simply declined to make the endangerment determination in the first place.  794 F. Supp. 2d at 160.  The court predicated its ruling, in part, on the need to minimize this risk.

But this concern does not provide grounds to imply a nondiscretionary duty that is not in the statute to fashion a remedy that does not clearly exist.  There is another mechanism that prevents EPA from shirking its responsibilities, even those that are discretionary:   EPA is required to respond to a citizen petition for rulemaking.  *See Nat'l Parks Conservation Ass'n v. U.S. Dep't of Interior*, 794 F. Supp. 2d 39, 44–45 (D.D.C. 2011), citing 5 U.S.C. §§ 553(e), 555(b) ("[A]n agency is required to at least definitely respond to a petition – that is, to either deny or grant the petition.") (internal quotation marks and alterations omitted).   And if the petition is denied, the petitioner may seek a review of the decision in the court of appeals.  *See Massachusetts*, 549 U.S. at 514 & n.16.

In *Massachusetts*, the Supreme Court found that the exclusive jurisdiction that Congress granted to the court of appeals under section 307 of the Clean Air Act included the authority to review the reasonableness of EPA's explanation for "why it cannot or will not exercise its discretion" to make the threshold endangerment determination.  549 U.S. at 533 ("Under the clear terms of the Clean Air Act, EPA can avoid taking further action only if it determines that greenhouse gases do not contribute to climate change or if it provides some reasonable explanation as to why it cannot or will not exercise its discretion to determine whether they do."); *see also id.* at 514 & n.16 (describing that the D.C. Circuit's jurisdiction to review EPA's decision arose under section 307 of the Clean Air Act).

In this case, EPA has formally responded to plaintiff's petition asking it to make the endangerment determination for lead emissions from aviation gasoline now.  And it has set out in its decision the reasons why it believes it is not yet prepared to make the determination.  Both parties agree that the decision is a final agency action that is reviewable by the court of appeals under section 307 of the Clean Air Act.  Ex. 4 to Defs.' Mot. [Dkt. # 22-6] at 1–2; Defs.' Mem. at 19; Draft Tr. at 23:14–20 (The Court:  "But it is a final agency action that's reviewable at this point.  They denied your petition, correct?"  Counsel for plaintiff:  "They have denied the petition.").  If this Court were to determine whether the endangerment determination has been unreasonably delayed, it would be required to review the very reasons set out in EPA's decision on plaintiff's petition.  That is the precise inquiry over which the D.C. Circuit has exclusive jurisdiction.

And the record that this Court would review is the very same as – or at least overlaps substantially with – the administrative record that the circuit court would use to review EPA's denial of plaintiff's petition.  In their joint status report of August 16, 2012, EPA proposed

resolving the unreasonable delay claim based on the administrative record of its response to plaintiff's petition.  Joint Status Report (Aug. 16, 2012) [Dkt. # 25] ¶ 8.  Although plaintiff has taken the position that it might be entitled to some additional discovery on the unreasonable delay claim in this case, it admits that "there may be some overlap between the documents Plaintiff would seek in discovery and those that Defendants have proposed to produce."  *Id.* ¶ 4. Plaintiff noted it would seek additional materials "to the extent they are not included in EPA'[s] record of the petition denial."  *Id.*  So this Court has serious concerns that if it opens its doors to plaintiff's lawsuit to compel EPA action, it will be treading directly on the D.C. Circuit's territory, and analyzing questions that fall within its exclusive province, based on a record that is identical – or at least substantially similar to – the record that would underlie a review of the denial of the rulemaking petition.  Under those circumstances, the Court does not find it prudent to conclude that it has jurisdiction to undertake to enforce a duty that is at best only implied by the statute.  The concerns that animated the district court in *Center for Biological Diversity* are not present in this case, and EPA is subject to judicial review if it has avoided engaging in the comprehensive regulation of pollutants that Congress established by dragging its feet and unreasonably postponing the endangerment decision.

**CONCLUSION**

Accordingly, the Court finds that the endangerment determination is not a nondiscretionary act or duty that the citizen suit provision grants the district courts the jurisdiction to compel.  Because the Court does not have jurisdiction over the only cause of action remaining in plaintiff's complaint, the Court will grant defendants' motion for summary judgment.  A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  March 27, 2013